The argument, Judge Mayer will listen to us. This is the Old Reliable Wholesale against Cornell Corporation, number 2010-1247. Mr. Guad. Thank you, Your Honor. May it please the Court. There are basically two points that I want to address. One is the finding that the case was objectively baseless and that there was litigation misconduct. Joe R.W. contends neither of those findings were correct and are clear error. First of all, the district court committed clear error in finding that the validity claim was objectively baseless in light of the inventor's testimony. Specifically, the court said that when the inventor testified that the prior art and the commercial embodiment, and inferred in that the claim to invention, all did the same thing. That at that point, it became clear that the claim was anticipated by the VT2 product, Cornell's product. Now, that testimony goes towards function. To say that they all do the same thing, that addresses function. The claims at issue are apparatus claims and essentially, functional equivalence is not part of the test for anticipation of an apparatus claim. It would be relevant if it were a means plus function claim, but here it's not. Mr. Baum, I'm frankly not unsympathetic to your point and for exactly the reason you suggest. But let me ask you this, even assuming we were to agree with you that the inventor's testimony was not enough in and of itself, and at that point in time, to trigger the court's concluding that, whether you call it proceeding with a frivolous action or litigation misconduct, we'll put that to the side for the moment. But even if that was not sufficient to justify the court's ruling, why would the court not have been correct as of March 3rd of the following year when Dr. Rice testified, as he did, and I'm looking at footnote 20 of the court's opinion, why would that not have been a legitimate point at which the court could have selected to charge him with attorney fees? Because the court did make a finding at that point that that was an indication of bad faith. It did. The court cited that in a footnote. And essentially, what the court said is Dr. Rice's testimony was that the blocks were integral with the facer, which is just basically fiberglass or a thin piece of paper, on the accused product. The blocks are integral with the OSB and the VT2. And I mean, that is correct. But that really doesn't go towards anticipation either. Or at least our argument was, and we were relying in good faith on Cornell's own material safety data sheets, which clearly defined the insulation as being the combination of the polyisocyanate foam and the facer. But you're saying that you were relying in good faith. The judge has found that you were acting in bad faith. At least I think the last sentence of that footnote would seem to me to suggest such a finding, or indicate that that's the case. And I'm unclear of why that would be bad faith. Our argument was based on Cornell's own documents that define the insulation material as being the combination of the polyisocyanate foam and the facer. So that combination is the insulation. When you attach the block to that combination, you're attaching the block to the insulation. Whereas in the VT2, you're attaching it to the OSB, and the insulation's below it. Now ultimately, the- It's pretty thin. Pretty thin distinction. Well, I don't think so, because the facer really doesn't do anything. I was trying to think of a good analogy. It's almost like the little cup you make in cupcakes, and you put it in, and you pour the batter in, you cook it, they pop it out, and you pull it off. That facer's just there for the manufacture of polyisocyanate foam. And what demonstrated that was in Cornell's own product, the X product, which we'd also accused of infringement, the X1, it used, I'm blanking on the type of foam, but it's in the brief, it's a different type. And that doesn't require a facer, because it doesn't stick to the molds. And in those products, they don't have a facer. And in fact, even in the VT2 as they sell it today, that has the two layers, they've still got the facers. You literally have the foam insulation with facers on both sides, then the OSB, then the blocks, then another layer of blocks. That facer doesn't do anything, which is consistent with their own material safety data sheet, that it's part of the insulation. And that's what we were relying on. Their own documents. Well, and the other thing that I wanted to mention on the objectively baseless aspect of the case was that we think that the subsequent findings or proceedings before the PTO and the re-examination are also probative of the fact that it was not objectively baseless to move forward with those claims, thinking they were valid. In this case, Cornell instituted or initiated the ex parte re-exam during the litigation. They gave the PTO everything they had given the district court, all the art that the district court eventually relied on. And eventually this court affirmed the district court's decision. The PTO had all of that, found substantial questions, new questions of patentability based on the VT2, the Branch River product, initiated the re-exam, and then after some back and forth, found all the claims patentable and issued the notice of confirmation or I'm sorry, whatever it's called. Now, procedurally, that was incorrect. This court had already affirmed the district court. Somehow the PTO missed that, but we're not asking the court to take judicial notice that the PTO was correct, just that here was a very experienced third party, three examiners in the central re-examination unit looking at the same art. And they came to the conclusion that the claims without any amendments were patentable over that art. And it just seems that ORW could not have been it couldn't have been objectively baseless for ORW to rely on the validity of those claims and the presumption of validity because it's the standard and is really that no reasonable litigant could expect success on the merits. And we've got three experienced examiners looking at it and saying, these claims are patentable. In fact, if the timing of the re-exam had been different, the outcome of this case would probably be very different right now. Now the district court also erred in finding litigation misconduct. Essentially what the district court did is it looked at the inventor's testimony that the devices, the prior art and the claim to mention did the same thing and said, well, at that point, the validity was objectively baseless to contend that the claims were valid. And then it basically went on to say, proceeding with that claim is litigation misconduct. It's not really clear from the court's decision. It actually says, I don't have to apply the Brooks Furniture two-part test to determine whether the case is exceptional because I've already found litigation misconduct without identifying what it is, just in a footnote. Essentially, the district court has conflated the whole Brooks Furniture test. It said, look, if I find that it's objectively baseless, I can also roll that into litigation misconduct by itself. But litigation misconduct really involves unethical or unprofessional behavior during the course of the litigation. And there was none of that here. In fact, in a footnote, the district court even said footnote 23, there was no basis for an award against the lawyers. And there's been no findings of any misleading testimony or anything like that by ORW. So there's no basis for litigation misconduct other than theoretically bringing this objectively baseless claim. But using the court's reasoning, every time there was a finding of a claim being objectively baseless, that would automatically lead to litigation misconduct. And that can't be correct. So we think the court committed clear in not applying the Brooks Furniture two-part test. Now, in looking at the litigation misconduct, I mean, Cornell has tried to argue that there, in fact, they call it, they say there's a laundry list. They say, well, it's a paradox. For us to accuse the VT one of infringement and distinguish the VT two. But again, we were relying on the FACER and their own material safety data sheet. You know, they say that it was litigation misconduct. This is Cornell's argument, not the court's finding that maintaining claims after we learned of the Branch River Airflow product was litigation misconduct. But, you know, we relied on Cornell's own prosecution history when they tried to get a patent on the VT two in 1987, where they described the airflow without any mention of cross ventilation. There's no documents, including the brochure of the airflow product that showed any cross ventilation. In fact, in order to get there, they had to take a deposition of a Branch River employee right before the dispositive motion deadline. And they actually get an extension of discovery to do it. And yet this was a reference they knew of back in 1987. So us knowing of that, and I think the case law is clear too simply knowing of a reference that the court eventually may find invalidates a claim is not in and of itself enough to make a case a claim exceptional or certainly doesn't constitute litigation misconduct. Cornell cites repeatedly that there was an overwhelming body of prior art and we should have, and in proceeding in light of that was litigation misconduct. But there's been no findings to that. There's only two pieces of art that are relevant here at all, the VT two and the Branch River airflow product. Those were addressed by the district court. Those were also addressed by the patent office. And again, the patent office said, we've looked at them. We've looked at Cornell's arguments. Cornell filed the ex parte re-examination petition. They made all their same arguments there. And the PTO said, claims are allowable. Yeah, it was a mistake for them to do that in light of the district court's opinion being affirmed. But the point is they sat down and did the substantive analysis. And in the end, the claims were allowable or they thought they were. I don't think ORW was unreasonable in believing that either. You want to say something about it? Yes, yes, please. Thank you. Mr. Huchat. Thank you, your honor. May it please the court, council. I'm Matthew Scott, I represent Cornell Corporation. We believe the district court got this decision right, just like it got the summary judgment decision right. The summary judgment was affirmed on appeal by this court under rule 36 without opinion because it was a clear case of invalidity over not just one, but two prior art references. One of those prior art references was a Cornell prior art reference. The VT2 is depicted in our brief. There's some photos in our brief. The VT1 and the VT2 are the kind of the key prior art references here. They're on page four and page six of the red brief. And if you compare those two photos and you look at them, you look at the one on page six. That is the prior art reference. It's undisputed that that was being advertised and sold in the 80s. The patent critical date here was April 11, 1989. There's no dispute that our client's product, that product on page six was being advertised and sold before the patent critical date. What were those references before the office of re-examination? Your Honor, I don't have an exact body, but of what was before the patent office on the ex parte re-exam, but I believe they were. And our position with regard to the patent office re-exam is that the patent office messed this up. They never should have issued the re-exam in the first place and we've actually made a motion to strike all of that portion. But we're not deciding validity. We're deciding how exceptional all of this is. That's correct. And to that extent, none of what the patent office did after the district court summary judgment ruling of invalidity and after this court's rule 36 affirmance of that ruling, and after the timeline for appeal to the U.S. Supreme Court had expired, anything after that is irrelevant. And Judge Dowd did not consider that. Well, but certainly Judge Dowd was entitled in the attorney fee proceeding to consider any evidence that might bear on the question of bad faith or even the closeness of the case, right? Certainly, and... I mean, I assume, although it was not clear to me, that the evidence regarding the PTO proceeding, the re-examination was not in fact brought before Judge Dowd, but what's the timing? When did the three examiners... I believe the... When did they have their decision? I believe the notice of intent to issue certificate was June 15, 2010. So, you have a substantial... Actually, yeah, 2010. And you see you have a substantial period of time that had passed since this court had found the patent invalid. Well, yeah, yeah. But, and that was before Judge Dowd's attorney fee ruling or after? It was after. After, all right. Well after. And I believe that what happened at the patent office, they got some wires crossed, they have some procedural problems, but they've actually even made another mistake on top of the one they made, and they've issued another. Well, we don't know what happened in the patent office, but what we need to decide is whether, in fact, the pursuit of this litigation was so objectively baseless that it needs to be sanctioned. And here we have the office under examination. You're criticizing them, but we don't know. That's not before us. We don't have the record. We don't have argument on what happened in the office, but we have that the office reached a conclusion which said that this patent is not invalid. You say they got it wrong, but people always tell us the office got things wrong. That's not before us to decide. All that we know is that they decided that, in fact, the subject matter was patentable. And again, we're not making a substantive decision. Now we need to decide whether there was such bad faith and all of the other consequences to sanction the entire operation. But I don't think we can separate entirely the invalidity and the clear invalidity of this patent. Well, why is it so clear? That's what I meant to raise. It was not so clearly invalid to the office, just the other way around. The office decided it was valid. The office, in deciding, in issuing its intent to issue the certificate, analyzed a Russian patent and almost entirely- You tell us they got it wrong. We have no basis to go behind their decision of a re-examination. And I think it's unfair for ORW to come in with something that was not in the record. That's why we've moved to strike it under the applicable rule. It wasn't before Judge Dowd. It's completely irrelevant. The decision has no force, no effect. They cannot overrule this court in deciding that the patent was invalid. They aren't asking us to do that. But that's- They're saying that this was not an action brought in bad faith. But the patent office, I'm constrained and limited in what I can say, because obviously the patent office's decision is not before this court. Well, why isn't it before the court? Why isn't it judicially noticeable that the patent office has at least taken this action? Because the facts are not undisputed. The facts before what the patent office had in front of it were limited. They did not have significant portions of the deposition testimony. They didn't have a lot of the evidence and information that the district court had when it made its ruling and it's made its decision. Let me give you a hypothetical that might be somewhat parallel. Suppose that we were proceeding with a sanctions order, to review a sanctions order against someone for having proceeded with litigation in the district court in an unjustified, on an unjustified claim. And while the case is pending before us, another circuit decides that exactly the same claim, a claim of exactly the same nature, was in fact not only not frivolous, but in fact ought to prevail. That would be something that would be judicially noticeable by us, I would think, and that would might influence our judgment as to whether the position taken, even though we might agree that it was wrong, was nonetheless not simply frivolous and sanctionable. Wouldn't you think? I would agree. Why isn't that parallel in all material respects to this situation? Because to the extent the other circuit in your hypothetical did not have the entire pie, they had one piece of the pie. It might have had a bad argument before it, it might not have had all the evidence and so forth and so on, but it'd still be a judicially noticeable fact that on whatever record they found that there was a merit to the argument, wouldn't it? I don't think so, because I think to take judicial notice of it and then give weight to the decision that was made is where the error creeps in. Because if the patent office did not have all of the information available to the district court, did not have the deposition testimony, did not have the testimony of Richard Dufanese, who said prior to the critical date on one of these pieces of prior art, I cut cross channels in it. ORW's, the appellant's expert said, if the Branch River Airflow Panel had cross channels, it would invalidate. Where is that in the record? I was just looking for it during your opposing counsel's argument. I can't, I couldn't put my finger. Do you have that reference? I don't have. That's Dr. Rice, right, isn't it? No, that's not Dr. Rice. It's the other expert. Dr. Rice is actually, yes, that's correct, Your Honor. It's at page 377 of the appendix. Okay. I believe that's the correct reference. I may be giving the reference for where Dr. Rice admits. That's, yeah, that's where I was looking. I didn't see that. Well, Dr. Rice admits that polyisocyanurate when foamed onto something and sandwiched between two layers becomes integral with the layers. And my initial point here was a pretty simple one. When you look at the accused product, the VT1, and the invalidating prior art, the VT2, both are Cornell products. Both are identical, but for one thing. The VT2 has a 716th layer of wafer board between the space box above and the insulation below. What happened in the VT1 in the mid-90s, our client decided, let's pull out the OSB layer and put in a felt facer. So now what you have, at least for purposes of construing the 950 patent, is two identical products, one of which was well prior to the critical date, undisputed, and one of which is accused as an infringing product. This is the paradox that Judge Dowd recognized throughout this case. It came up repeatedly, and it was compounded by the claim construction advocated for by ORW, the appellant, when they asked the court to construe the term integral in claim one as formed with or joined to. Our client's products were only joined to. They would not have fit with the formed with claim construction. But that construction, joined to, applied to the prior art VT2 panel, just like it applied to the accused panel, the VT1. So what you have is a district court judge looking at the two smoking guns, the Branch River Airflow panel, and the VT2 panel by our client, and saying, this does not make sense. It doesn't pass the smell test, and this patent is invalid. We cited a large body of prior art on an obviousness analysis, but Judge Dowd never reached that large body of prior art. He limited his analysis at summary judgment to the two most obvious anticipating references, which were our client's product and the Branch River Airflow panel. The main point here is that we have a relatively simple patent, a relatively simple product, and the prior art is relatively simple. The facts of this case are simple. And we get into the Brooks analysis and whether litigation misconduct needs to be shown or whether we're under the two-part analysis, the subjective bad faith and the objective baselessness test. Judge Dowd did not analyze in any depth the objective baselessness and the subjective bad faith of the claims pursued here, but I think we can get to that conclusion from his opinion. He looks at this and says, this is studied ignorance at its finest. Where did he say that? Judge Dowd's opinion at page eight. And the reference is, I believe it's to the bad faith. Where, what on page eight are you looking, 22? I'm looking specifically, there's a paragraph, the paragraph ends with ORW or overlappable wholesale may have had a basis for filing the case. Was this on page eight? Of the opinion. But ORW did not have a basis for continuing the case after discovery had been completed. Is that, you see that at the end of the first paragraph or this, I apologize. Where's the appendix page? Appendix 46, is that the appendix page you're looking at? I believe it is, Your Honor. I don't, that paragraph is just addressing the party's contentions, as I see. I think too, Judge Dowd has also made some findings that give ORW the benefit of the doubt. Saying, let's give ORW the benefit of the doubt. When they got that February 12th, 2007 letter analyzing claim by claim why the 950 patent was anticipated, let's give them the benefit of the doubt on that. When they filed the case back in October, let's give them the benefit of the doubt on that. Where does it say the benefit of the doubt? I'm just, that's my characterization of his opinion. That's his conclusion. He doesn't start awarding fees until September 27, 2007. Here's the problem I have, and let's get right to the core of what I think is the main point on appeal. And that is that Judge Dowd has sidestepped, if you will, the two part Brooks analysis that is usually applied to the question of whether there's a frivolous claim being asserted. Has used the litigation misconduct, but has used the litigation misconduct that he recites is filing and maintaining a frivolous claim without seemingly more, which gets rid of the subjective bad faith requirement. And I'm having a hard time seeing why that's a justifiable implementation of litigation misconduct. If all you're doing is substituting a one part test for a two part test that normally applies to frivolous claims. I believe in Brooks, the analysis is not that simple. And I think that the Brooks test is reflected on page 1378 of that, or 1381 of that opinion. May I briefly conclude, your honors? Yes, finish your sentence. The test issues, the test begins with an example or a qualifying language that says such as. It goes on to list a number of different things that can be inappropriate conduct related to the matter in litigation. One of those things is vexatious litigation. So that in and of itself would fall under the first part, not putting us into the second two part test. But even if we get to the second two part test, Judge Dowd could have made findings consistent with the two part test. He simply elected not to because he determined that litigation misconduct had occurred. I think the result is the same, whether we go through the analysis on the subjective bad faith and the objective baselessness, or whether we find litigation misconduct in the first part of the test. Okay, thank you, Mr. Scott. Thank you, your honors. Thank you, your honor. The key part to this whole exceptional finding is whether or not our claims were objectively baseless. If they weren't, nothing else matters. And the exceptional finding is wrong as a matter of law. And I think that was the conclusion that the ILRV Google case of this court just two days ago addressed. Here, the PTO, we talked a little bit about that. The PTO, the main criticism of the re-examination was that it didn't have the complete record. Well, it did have a complete record. It had, according to its own litigation search, it had all the opinions of the district court. Even the fee decision was pulled before they issued that notice. Also, the only thing that was really relevant here is the 102 analysis. Whether or not the claims are anticipated by the VT2, the Rosenblatt patent, the Branch River, or any of the other art. Could you help me with that? I was looking for, and could not put my finger on the place in the record where ORW's expert referred to the airflow and the question of anticipation by virtue of cross-flow. I think I can find out. Yeah, it was the hypothetical where counsel said, if, as cross-flow, would it anticipate? And he said yes. And he said yes. But it, I mean, we don't, our contention was that it didn't, that based on their own prosecution history from their earlier 1987 patent, they described it as having parallel ridges, not cross-ventilation, that the only brochure, the only document, the only 102 reference, if you will, or prior art reference, single reference, did not show cross-ventilation. And there was a testimony from. Eventually, they got testimony from one witness who said, yeah. And that was very, at the time, we contested it quite a bit as unreliable, and there was no corroboration, et cetera. Eventually, the district court didn't accept that. But I don't think that makes. That's your position. Correct. But I don't think being wrong on that, when it's not as if the brochure had a picture of cross-ventilation, and we were arguing it didn't. I mean, this took a lot of work to get to that. They had the reference since 1987, long before we ever came along. And they had to get an extension on discovery and run out and take a deposition at the last minute to even get there. Because, and I think that's reflected even in their own brief. They talk about how this was a 103 issue. They say ORW should have dismissed because we told them about the VT2, which has cross-ventilation. We told them about the Branch River. That's a single board. And boom, it should have been obvious. Well, obviousness is much more complicated than that, and can be. And there was really a concession that even at that point, they understood that the Branch River was not a 102 reference when they're making 103 arguments about it. Thank you. Thank you, Mr. Glatton.